## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTINA FOSTER,

                        Plaintiff,

     v.

HORIZON DENTAL CARE AT
STEAMTOWN, INC. d/b/a HORIZON
DENTAL CARE OF HAWLEY,

                    Defendant.

CIVIL ACTION NO. 3:25-CV-01424

(MEHALCHICK, J.)

## MEMORANDUM

Before the Court is Plaintiff Christina Foster's ("Foster") motion for leave to amend the complaint (Doc. 19) and Defendant Horizon Dental Care at Steamtown, Inc. d/b/a Horizon Dental Care of Hawley's ("Horizon Dental") motion to compel arbitration or, in the alternative, to dismiss the complaint. (Doc. 10). For the following reasons, Foster's motion for leave to amend the complaint will be **DENIED** and Horizon Dental's motion to compel arbitration will be **GRANTED**. (Doc. 10).

## I.    BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from Foster's complaint and, for the purposes of the instant motion, is taken as true. (Doc. 1). Foster, an adult woman, was employed as an Office Manager at Horizon Dental starting on or around December 10, 2012. (Doc. 1, ¶ 21, 24). Foster went on a twelve-week, preapproved maternity leave starting in or around June 2023. (Doc. 1, ¶ 25, 30). Per her arrangements with Horizon Dental, Foster continued to work remotely during her maternity leave. (Doc. 1, ¶ 26). Horizon Dental placed Foster in a remote Insurance Coordinator position during her maternity leave and remote working arrangement. (Doc. 1, ¶ 27).

At the end of her preapproved, twelve-week maternity leave, Foster notified Jon Evanish ("Evanish"), owner and Chief Operating Officer of Horizon Dental, that her newborn son would not take a bottle and had to continue breastfeeding. (Doc. 1, ¶¶ 28, 30). Foster was unable to bring her son to work because there was no physical space or accommodation at the Horizon Dental office for a newborn to feed or sleep. (Doc. 1, ¶ 31). Evanish approved Foster to work from home from October 2023 through December 2023. (Doc. 1, ¶ 32). Foster continued working remotely as an Insurance Coordinator into January 2024. (Doc. 1, ¶ 33). Around the end of January 2024, Evanish informed Foster that he was decreasing her pay by two dollars per hour. (Doc. 1, ¶ 33). On or about February 6, 2024, Evanish agreed to continue to let Foster work from home in the role of Insurance Coordinator until her son turned one year old. (Doc. 1, ¶ 35).

On or about April 2, 2024, Evanish asked Foster to come in-person to work for a meeting the following day. (Doc. 1, ¶ 36). Foster was unable to come in-person to attend the meeting because she could not get a last-minute babysitter for her newborn. (Doc. 1, ¶ 37). On or about April 4, 2024, Horizon Dental informed Foster that she was terminated and sent Foster a termination letter. (Doc. 1, ¶ 38). Evanish's stated reason for Foster's termination was that Horizon Dental could not agree with Foster on her remote work accommodation. (Doc. 1, ¶ 41). Two other Insurance Coordinators at Horizon Dental worked fully remotely without issue and were not subject to a two dollar pay reduction in January 2024. (Doc. 1, ¶¶ 34, 42). Neither of these two remote Insurance Coordinators took maternity leave nor were their remote work situations related to childbirth or newborn nourishment and care. (Doc. 1, ¶ 43).

Foster commenced this action on May 27, 2025, by filing a complaint against Horizon

Dental in the United States District Court for the Eastern District of Pennsylvania. (Doc. 1). Therein, Foster alleged the following Counts: Count I – Pregnancy Discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (Doc. 1, ¶¶ 48-59); Count II – Pregnancy Discrimination under the Pennsylvania Human Relations Act ("PHRA") (Doc. 1, ¶¶ 60-70); Count III – Retaliation under Title VII as amended by the Pregnancy Discrimination Act (Doc. 1, ¶¶ 71-74); Count IV – Retaliation under the PHRA (Doc. 1, ¶¶ 75-78); and Count V – Discrimination under the Equal Pay Act (Doc. 1, ¶¶ 79-85). On July 31, 2025, Judge Joshua D. Wolson in the Eastern District of Pennsylvania found that venue was improper and ordered the Clerk of Court to transfer the action to the Middle District of Pennsylvania. (Doc. 7).

On August 26, 2025, Horizon Dental filed the instant motion to compel arbitration or, in the alternative, to dismiss the complaint. (Doc. 10). On September 10, 2025, Horizon Dental filed a brief in support of its motion. (Doc. 14). Foster filed a brief in opposition to Horizon Dental's motion on October 2, 2025, in which she sought leave to amend the complaint.[1] (Doc. 16). On October 16, 2025, Horizon filed a reply brief. (Doc. 17). On December 5, 2025, the Court ordered Foster to file a motion for leave to amend the complaint in accordance with the Court's local rules. (Doc. 18). Pursuant to the Court's Order, Foster filed a motion for leave to amend the complaint and brief in support on December 15, 2025. (Doc. 19; Doc. 20). On January 8, 2026, Horizon Dental filed a brief in opposition to Foster's

---

[1] In the brief in opposition, Foster did not dispute the validity of the arbitration agreement between the parties but asserted that her claims fall within a narrow exception pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021. (Doc. 10, at 7). However, Foster did not allege a claim of sexual assault or sexual harassment in the initial complaint. (Doc. 1). Foster asked the Court to grant her leave to amend the complaint to cure any deficiencies based on failure to trigger the arbitration exception before compelling arbitration or dismissing the case. (Doc. 10, at 16).

motion. (Doc. 24). Foster failed to file a timey reply brief. Accordingly, the motions have been fully briefed and are ripe for disposition.

## II.   LEGAL STANDARDS

### A.   MOTION FOR LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a)(1) permits amendment of a pleading as a matter of course.

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1)

"In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

### B.   MOTION TO COMPEL ARBITRATION

"It is well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). However, "the cardinal principle of the law of arbitration is that 'under the [FAA, arbitration] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.'" *Gay v. CreditInform*, 511 F.3d 369, 388-89 (3d Cir. 2007) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). The Federal Arbitration Act provides

that "[a] written provision in any. . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract. . .shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity. . ." 9 U.S.C. § 2. The Supreme Court has interpreted the FAA to require courts to "rigorously enforce arbitration agreements according to their terms, including terms that 'specify with whom the parties choose to arbitrate their disputes,' and 'the rules under which that arbitration will be conducted.'" *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013) (internal citations omitted); *see MacDonald v. CashCall, Inc*, 883 F.3d 220, 226 (3d Cir. 2018). "Federal law determines whether an issue governed by the FAA is referable to arbitration." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). "Questions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law." *Harris*, 183 F.3d at 179; *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) (stating "[the FAA] creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate"). Section 2 of the FAA sets forth the basic rule of federal law:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

> 9 U.S.C. § 2.

Nevertheless, notwithstanding the supremacy of federal law, courts look to ordinary state law principles of contract formation to make this determination. *See Alexander*, 341 F.3d at 264; *see also Gay,* 511 F.3d at 388.

To compel arbitration, a court must determine (1) the validity of the arbitration agreement and (2) whether the dispute falls within the scope of that agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *see also Bey v. Citi Health Card*, Civ. Action No. 15-6533, 2017 WL 2880581, at *4–5 (E.D. Pa. July 6, 2017). Under the Supreme Court's longstanding severability rule, "a party cannot avoid arbitration by attacking the contract containing the arbitration clause as a whole (the 'container contract'). Rather, the party opposing arbitration must challenge 'the arbitration clause itself.'" *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967)). When "[a]pplying the relevant state contract law, a court may also hold that an agreement to arbitrate is 'unenforceable based on a generally applicable contractual defense, such as unconscionability.'" *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (quoting *Alexander*, 341 F.3d at 264); *see Gay*, 511 F.3d at 388 ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]" (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, (1996)).

"The Third Circuit has established a two-tiered framework for assessing motions to compel arbitration." *Lloyd v. Retail Equation, Inc.*, No. CV 21-17057, 2022 WL 18024204, at *4 (D.N.J. Dec. 29, 2022) (citing to *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013)). First, "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti*, 716 F.3d at 776 (citations and

internal quotations omitted); *see Lepore v. SelectQuote Ins. Servs., Inc.*, No. 22-3390, 2023 WL 8469761, at *2 (3d Cir. Dec. 7, 2023). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Guidotti*, 716 F.3d at 776 (quotation marks omitted). "To proceed otherwise would plainly disadvantage moving parties because they would be limited to the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents relied upon by the complaint, even when non-moving parties introduced and relied on other evidence in opposition." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 330 (3d Cir. 2022). After this, the court may entertain a renewed motion to compel arbitration, this time judging the motion under the summary judgment standard of Rule 56. *Guidotti*, 716 F.3d at 776.[2] In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA

---

[2] Several courts within this district have denied motions to compel arbitration and ordered limited discovery where the issue of arbitrability was not apparent on the face of the complaint, properly applying *Guidotti*. *See, e.g.*, *Reaser v. Credit One Financial*, No. 3:15-CV-1765, 2016 WL 245541, at *3 (M.D. Pa. Jan. 21, 2016); *Potts v. Credit One Financial*, No. 3:15-CV-1119, 2016 WL 225678, at *5 (M.D. Pa. Jan. 19, 2016) (allowing sixty (60) day limited discovery on the issue of arbitrability); *Rajput v. Credit One Financial*, No. 1:15-cv-00807, 2015 WL 8012938, at *3 (M.D. Pa. Dec. 12, 2015); *Briggs v. Macy's Inc.*, No. CV 3:16-0902, 2017 WL 590274, at *1 (M.D. Pa. Feb. 14, 2017).

envisions." *Somerset Consulting, LLC v. United Cap. Lenders, LLC,* 832 F. Supp. 2d 474 (E.D. Pa. 2011) (quoting 9 U.S.C. §4).

    C. <span style="font-variant: small-caps">Motion to Dismiss</span>

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a

plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

## III.    DISCUSSION

### A.    MOTION FOR LEAVE TO AMEND

Foster moves for leave to amend her complaint to add claims of sexual harassment under Title VII and the PHRA against Horizon Dental. (Doc. 20, at 2). Foster avers that all proposed amendments to the complaint relate back to May 27, 2025, the date Foster filed her initial complaint. (Doc. 20, at 2). Horizon Dental counters that Foster only seeks to amend her complaint to assert a new claim that will bring her case within the scope of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (hereinafter

"EFAA") and preclude the Court from compelling arbitration. (Doc. 24, at 1). Horizon Dental submits that in the proposed amended complaint, Foster failed to allege facts that give rise to sexual harassment directed at her; Foster did not and cannot allege that any conduct supporting a sexual harassment claim occurred after the enactment of the EFAA; and Foster failed to exhaust the required administrative remedies for new allegations of sexual harassment. (Doc. 24, at 1-2). The Court will first address whether Foster plausibly plead a sexual harassment claim under Title VII and the PHRA. Then the Court will address whether Foster exhausted the administrative remedies for her new sexual harassment claim.

### i. Foster Did Not Plausibly Plead Sexual Harassment Under Title VII or the PHRA.

Federal Rule of Civil Procedure 15(a) provides that a party may amend its complaint once as a matter of course no later than 21 days after serving the complaint or no later than 21 days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Once the deadline for amendment as a matter of course expires, a party may amend its complaint only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Foster may only amend her complaint with leave of the Court because she filed the motion to amend the complaint six months after she filed the initial complaint and five months after Horizon Dental filed its motion to compel arbitration or, in the alternative, dismiss the case. (Doc. 1; Doc. 10; Doc. 19).

While a decision on leave to amend is within a court's discretion, courts should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court's denial of leave to amend can be justified on the bases of undue delay, bad faith, dilatory motive, prejudice, and futility. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Bulington Coat Factory Sec. Litig.*, 114 F.3d at 1434; *Lorenz v. CSX*

*Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993)). To determine futility, courts assess whether the proposed amendments are vulnerable to dismissal under Rule 12(b)(6). *Shane*, 213 F.3d at 115. Stated differently, courts should deny leave to amend when the proposed amendments fail to state a claim upon which relief can be granted. *In re Burlington Coat Factory Securities Litig.*, 114 F.3d at 1434. Foster's proposed amendments add allegations of sexual harassment leading to a hostile work environment under Title VII and the PHRA. (Doc. 19-1, at 12-14). Horizon Dental contends that Foster's proposed amendments are futile because they could not survive a Rule 12(b)(6) motion to dismiss. (Doc. 24, at 4).

Title VII of the Civil Rights Act of 1964 prohibits harassment that is severe or pervasive enough to alter the conditions of a plaintiff's employment and create an abusive working environment." *Donnelly v. Capital Vision Services, LLC*, 644 F. Supp. 3d 97, 107 (E.D. Pa. 2022); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). To survive dismissal under Rule 12(b)(6) on a sexual harassment claim, a plaintiff must plausibly plead that (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) there was respondeat superior liability.[3] *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013); *see Ismail v. McDermott Int'l Inc.*, No. 3:19-cv-1305, 2024 WL 1094685, at *5-*6 (M.D. Pa. 2024). Pursuant to the Pregnancy Discrimination Act of 1978, discrimination "on the basis of sex" includes discrimination based on pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k); *see Donnelly*, 644 F. Supp. 3d at 104. To assess whether a workplace is abusive or

---

[3] Sexual harassment claims brought under the PHRA are analyzed with the same framework as Title VII sexual harassment claims. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015).

hostile, courts must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mandel*, 706 F.3d at 168. Title VII protects against harassment based on discrimination against a protected class only and does not extend relief for general workplace harassment or strained supervisor-employee relationships. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80-81 (1998); *Ismail*, 2024 WL 1094685, at *5-*6.

A single act of harassment based on sex may be sufficient to sustain a hostile work environment claim, if the act "is of such a nature and occurs in such circumstances" that it reasonably characterizes the atmosphere in which a plaintiff works. *Winkler v. Progressive Business Publ'ns*, 200 F. Supp. 3d 514, 519 (E.D. Pa. 2016) (citing *Bedford v. Southeastern Pa. Transp. Auth.*, 867 F. Supp. 288, 297 (E.D. Pa. 1994)). However, isolated incidents and offhand comments are not enough to sustain a hostile work environment claim, even if they seem offensive to an employee. *Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014); *Sheehan v. Everstory Partners*, No. 24-6581, 2025 WL 2671056, at *7 (E.D. Pa. Sept. 17, 2025). A plaintiff may also rely on allegations of harassment involving other employees to show the presence of a hostile work environment. *Velez v. QVC, Inc.*, 227 F. Supp. 2d 384, 410 (E.D. Pa. 2002), *Tourtellotte v. Eli Lilly and Co.*, 636 F. App'x 831, 847 (3d Cir. 2016) (the "totality of the circumstances approach . . . allows courts to consider the larger context in which the alleged incidents occur in hostile work environment claims."). A plaintiff relying on conduct directed towards others must also allege how the conduct impacted them to plausibly state a hostile work environment claim. *Sheehan*, 2025 WL 2671056, at *7 (citing *Tourtellotte*, 636 F. App'x at 847).

In the proposed amended complaint, Foster alleges that Evanish intentionally and pervasively harassed Foster based on her sex, pregnancy, and/or post-partum status. (Doc. 19-2, at 14). Foster alleges facts regarding Evanish's repeated requests that Foster return to work in person and Evanish's history of harassment towards women at Horizon Dental. (Doc. 19-2, at 6-8). Viewed in the light most favorable to Foster, the Court finds that her sexual harassment claim lacks facial plausibility. Evanish's alleged messages asking Foster when she is coming back to work in-person do not describe "frequent, physically threatening, or humiliating harassment." *See Ismail*, 2024 WL 1094685, at *5-*6 (finding a series of emails and meetings criticizing employee's work performance did not constitute a hostile work environment under Title VII). Foster conclusively alleges that Evanish's messages to her asking when she would be returning to the office were frequent. (Doc. 19-2, at 6, 8). However, Foster fails to provide facts indicating whether this harassment occurred daily, weekly, or monthly, as would support a characterization of Evanish's harassment as pervasive. *See Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 688 (E.D. Pa. 2016). Foster also fails to allege facts showing that Evanish's communications with her on returning to the office were at all severe. *See Onacle*, 523 U.S. at 81 (finding insensitive remarks or unpleasant utterances may not sufficiently affect the conditions of employment in a manner severe enough to implicate Title VII); *see Donnelley*, 644 F. Supp. 3d at 108 (finding that a supervisor's discriminatory comments based on plaintiff's pregnancy and childcare responsibilities, while uncivil, were not severe enough to constitute a hostile work environment under Title VII); *see Walls v. Abington Surgical Center*, 758 F. Supp 3d 376, 390 (E.D. Pa. 2024) (finding chastisements of an employee and disruptions to her breast pumping schedule did not constitute severe hostility).

In her proposed amendments, Foster also includes conclusory allegations regarding Evanish's history of harassing women at Horizon Dental. (Doc. 19-1, at 6-8). Like with the allegations of Evanish's conduct towards her, Foster fails to provide facts indicating when these incidents of harassment occurred to support a characterization of Evanish's harassment as pervasive. *See Larochelle*, 210 F. Supp. 3d at 688 (finding that pleading daily, weekly, or monthly incidents of hostile treatment based on sex would support a characterization of pervasive harassment). The facts pled about dismissive and inappropriate remarks towards female staff and patients likewise do not rise to a level of severity required for a hostile work environment claim. *See Onacle*, 523 U.S. at 80 ("Title VII does not impose a general civility code in the workplace."); *see Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory challenges in the terms and conditions of employment."); *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) ("[C]onduct must be extreme to amount to a change in the terms and conditions of employment."). While certainly inappropriate, Foster's allegation that Evanish made comments like "there she is milking again," when K.W., a previous employee, pumped breast milk," does not rise to a level of severity sufficient for a hostile work environment claim. (Doc. 19-1, at 6); *see Lampkins v. Mitra QSR KNE, LLC*, 383 F. Supp. 3d 315, 333-34 (D. Del. 2019) (finding that a co-worker making "squeezing hand gestures" while the plaintiff was breast-pumping is akin to an offensive utterance and is insufficient to support a hostile work environment claim). Foster's allegation that a male provider was terminated after placing his hand on a female employee also does not rise to a level of severity required for a hostile work environment claim. *See Larochelle*, 210 F. Supp. 3d at 688 (collecting cases) ("Although [defendant's] physical touching of [plaintiff's] person was

certainly inappropriate, it is not sufficiently severe enough to satisfy the second prong of [a sexual harassment claim under Title VII]"). Looking at the totality of the circumstances in the light most favorable to Foster, Foster failed to plausibly plead facts giving rise to a sexual harassment claim under Title VII or the PHRA that could survive a 12(b)(6) motion to dismiss. Even if Foster did plausibly plead a sexual harassment claim, she still could not raise it because she failed to exhaust the administrative remedies for this claim.

### ii.    Foster Did Not Administratively Exhaust the Sexual Harassment Claim.

A plaintiff must exhaust all required administrative remedies before she can bring a claim for judicial relief under Title VII or the PHRA. *Mandel*, 706 F.3d at 163 (citing *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)); *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006). To exhaust the required administrative remedies, a plaintiff must by file a complaint with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *Mandel*, 706 F.3d at 165. Failure to include an allegation in the EEOC complaint is not fatal, as long as the acts alleged in the subsequent lawsuit are fairly within the scope of the prior EEOC complaint or the related EEOC investigation. *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996); *Simko v. United States Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021). To determine whether a claim fairly falls within the EEOC complaint or related investigation, courts consider (1) whether the claim advances the same theory of discrimination as the original charge, and (2) whether the claim arises from the same set of facts that support the original charge. *Simko*, 992 F.3d at 209 (collecting cases).

Foster cannot bootstrap a sexual harassment claim into the original EEOC charge because the allegations are sufficiently distinct. *See Simko*, 992 F.3d at 206. The new sexual

harassment claim was not advanced in the original charge. In the EEOC charge, Foster alleges discrimination based on her pregnancy, failure to accommodate, retaliation for requesting reasonable pregnancy accommodation, and disparate pay. (Doc. 24-1, at 3). Foster does not allege sexual harassment or hostile work environment anywhere in the EEOC charge or in the initial complaint in this action. (Doc. 1; Doc. 24-1). Foster first mentioned sexual harassment after Horizon Dental sought to compel arbitration, arguing in her brief in opposition that her claims should not be arbitrated because they fall within the EFAA. (Doc. 16).

The new sexual harassment claim also arises largely from facts not alleged in the original charge. The only overlapping facts in the EEOC complaint and the new sexual harassment claim are that throughout Foster's leave, Evanish "continued to ask [Foster] when she would be returning to in person work." (Doc. 19-1, at 5; Doc. 24-1, at 2). The EEOC charge does not include any mention of dismissive and inappropriate remarks Evanish made towards female staff and patients at Horizon Dental, the K.W. breast-pumping incident, or the termination of a male employee after placing his hands on a female employee at Horizon Dental. (Doc. 24-1).

Further, an investigation into the pregnancy discrimination, retaliation, and equal pay act claims in the EEOC complaint would not reasonably include an inquiry into whether Horizon Dental was a hostile work environment. *See Barzanty v. Verizon PA, Inc.*, 361 Fed. App'x 411, 414 (3d Cir. 2010) (finding that without language analogous to hostile work environment, such as "abusive atmosphere," in EEOC charge, a hostile work environment claim is not within the scope of a charge claiming sex discrimination); *see Sandon v. Travelers Mortg. Services*, Inc., 752 F. Supp. 1240, 1247 (D.N.J. 1990) (finding that sexual harassment

claims are sufficiently distinct from sex discrimination claims, requiring dismissal of the sexual harassment claim until administrative procedures are exhausted); *see Kemske v. Johnson Controls, Inc.*, 52 F. Supp. 3d 688, 696 (D. Del. 2014) (finding no language in plaintiff's charge of discrimination that gives rise to a hostile work environment claim when the charge of discrimination identifies only allegations of gender discrimination related to plaintiff's employment with defendant and her termination). Foster failed to administratively exhaust her sexual harassment claim because it is outside the scope of her EEOC charge of sex discrimination, and she did not file a separate EEOC charge for the sexual harassment claim within the appropriate deadline. Given Foster's failure to plausibly plead sexual harassment and failure to administratively exhaust the sexual harassment claim, the proposed amended complaint could not survive a Rule 12(b)(6) motion to dismiss. Accordingly, Foster's motion for leave to amend her complaint is **DENIED**. (Doc. 19).

      B.    Motion to Compel Arbitration

Horizon Dental contends that Foster should be compelled to arbitrate claims arising out of her employment at Horizon Dental in accordance with Horizon Dental's Alternative Dispute Resolution Policy ("ADR Policy") that Foster consented to. (Doc. 14, at 4-5). Foster does not contest the validity of the ADR Policy but asserts that the EFAA renders the ADR Policy unenforceable because she alleges conduct that constitutes sexual harassment in her complaint. (Doc. 16, at 7).

The EFAA, enacted on March 3, 2022, "is codified directly into the FAA and limits the scope of [the FAA's] broad mandate to enforce arbitration agreements." *Cornelius v. CVS Pharm., Inc.*, 133 F.4th 240, 245 (3d Cir. 2025) (quoting *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 84 (2d Cir. 2024)). The EFAA provides that arbitration agreements are invalid and

unenforceable for cases in which sexual harassment or sexual assault disputes are alleged. 9 U.S.C. § 402(a); *see also Cornelius*, 133 F.4th at 245. The EFAA defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under the applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). To show a sexual harassment dispute for the applicability of the EFAA, a plaintiff must sufficiently plead her allegations to survive a motion to dismiss under Rule 12(b)(6). *Doe v. Saber Heathcare Grp.*, No. 3:23cv1608, 2024 WL 2749156, at *3 (M.D. Pa. May 9, 2024) (citing *Mitura v. Finco Servs.*, Inc., 712 F. Supp. 3d 442, 451-52 (S.D.N.Y. 2024); *see also Sheehan*, 2025 WL 2671056, at *5 - *6 (collecting cases).

When a plaintiff asserts that the EFAA applies to her claims, as an initial matter under the terms of the statute, a court must first review whether the arbitration agreement is valid and binding. 9 U.S.C. § 402(b); *Doe*, 2024 WL 2749156, at *3 ("The . . . validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically . . ."). The FAA provides that an agreement to arbitrate an "existing controversy arising out of [a written provision in a contract to arbitrate a controversy] shall be valid, irrevocable, and enforceable," unless there are grounds "at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." *Sheehan*, 2025 WL 2671056, at *4 (quoting 9 U.S.C. § 2). The FAA "reflects a strong federal policy in favor of the resolution of disputes through arbitration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). "A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *Alexander v. Anthony Int'l, L.P.*, 241 F.3d 256, 263 (3d Cir.

2003). Before compelling arbitration, courts typically determine that "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement." *Kirleis*, 560 F.3d at 160.

To determine whether a valid agreement to arbitrate exists under the FAA, courts generally look to the relevant state law on the formation of contracts. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Under Pennsylvania law, courts consider "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *Blair*, 283 F.3d at 603 (citing *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998)). Consideration "confers a benefit upon the promisor or causes a detriment to the promisee and must be an act . . . bargained for and given in exchange for the original promise." *Blair*, 283 F.3d at 603 (quoting *Curry v. Estate Thompson*, 481 A.3d 658, 661 (Pa. Super. Ct. 1984)). Under Pennsylvania law, "continued employment after receiving notice of an arbitration policy is sufficient to establish acceptance of, as well as consideration for, an arbitration agreement." *Stephenson v. AT&T Services, Inc.*, No. 21-0709, 2021 WL 3603322, at *7 (E.D. Pa. Aug. 13, 2021) (citing *Blair*, 283 F.3d at 604 n.3); *see also Arberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. 19-83, 2019 WL 2077731, at *5 (E.D. Pa. May 10, 2019) (citing *Kirleis*, 560 F.3d at 160) (finding arbitration agreements will be upheld when they are "specific enough . . . to cover the employee's claims" and "the employee has expressly agreed to abide by the terms of [the] agreement").

Two ADR Policies were in effect during Foster's employment at Horizon Dental, a policy in effect from the date Horizon Dental hired Foster until April 3, 2020 and a policy in effect from April 3, 2020 through Horizon Dental's termination of Foster on April 4, 2024.

(Doc. 10-1, at 2-3, 7-27). Both policies provide, in relevant part, that workplace disagreements are to be resolved "through use of private, independent mediation and/or arbitration administered by the American Arbitration Association." (Doc. 10-1, at 7, 19). The policies also state that workplace disputes subject to the mandatory arbitration policy include claims related to employment termination, discrimination, and wage and hour disputes. (Doc. 10-1, at 7, 19). Here, Foster claims pregnancy and sex discrimination, retaliation, and equal pay act violations. (Doc. 1, at 6-9).

On April 7, 2014, Foster signed a receipt of Horizon Dental's ADR Policy, acknowledging, in relevant part, that she read and understood the ADR Policy and was given the opportunity to discuss the policy with counsel and/or Horizon Dental. (Doc. 10-1, at 29). Above the signature line, that Foster signed, were bold and capitalized terms stating, "[t]his contract contains a binding arbitration provision that may be enforced by the parties." (Doc. 10-1, at 29). Accordingly, both parties indicated an intent to be bound to the definite terms of the ADR Policy. *See Doe*, 2024 WL 2749156, at *4; *see also Sheehan*, 2025 WL 2671056, at *4. The ADR Policy is supported by consideration because Foster signed receipt of the ADR Policy on April 7, 2014 and was employed in exchange for agreeing to the ADR Policy. (Doc. 10-1, at 29); *see Stephenson*, 2021 WL 3603322, at *7 (citing *Blair*, 283 F.3d at 604 n.3); *see also Arberry-Jones*, 2019 WL 2077731, at *5 (citing *Kirleis*, 560 F.3d at 160). Therefore, Horizon Dental's ADR Policy is valid and enforceable, and Foster's claims fall within its scope.

Foster's claims do not fall within the scope of the EFAA because Foster failed to plausibly allege sexual harassment. While the allegations in the complaint may give rise to claims of sex or pregnancy discrimination, Foster fails to plausibly allege severe or pervasive sexual harassment to give rise to a hostile work environment claim. *See Lampkins*, 383 F.

20

Supp. 3d at 334 (finding plaintiff's demotion and hours reduction based on her breast-pumping showed disparate treatment but not hostile work environment); *Tourtellotte*, 636 Fed. Appx. at 835-36 (holding plaintiff failed to show hostile work environment despite evidence supervisor commented on her breastfeeding needs); *see also Turner v. PNC Fin. Services Grp., Inc.*, No. 2:20-cv-804, 2022 WL 214237, at *6 (W.D. Pa. Jan. 25, 2022) (collecting cases). Additionally, as explained fully in *supra* Section III.A., Foster failed to plausibly allege a claim of sexual harassment in her proposed amended complaint or exhaust administrative remedies regarding the sexual harassment claim. Without plausibly alleging sexual harassment under Title VII or the PHRA, the EFAA does not invalidate the ADR Policy between Horizon Dental and Foster. Accordingly, Horizon Dental's motion to compel arbitration is **GRANTED**. (Doc. 10).

## IV.    CONCLUSION

For the foregoing reasons, Foster's motion for leave to amend the complaint is **DENIED** (Doc. 19), and Horizon Dental's motion to compel arbitration is **GRANTED**. (Doc. 10).

An appropriate Order follows.

BY THE COURT:

Dated: February 9, 2026                    */s/ Karoline Mehalchick*
                                                    **KAROLINE MEHALCHICK**
                                                    **United States District Judge**

21